## ALFRED HENNEN *v.* S. H. WOOD et al.

The issuing of a patent for land by the United States does not affect any rights subsisting between third persons and the patentee, growing out of contracts in relation to the land covered by the patent. The patent, to whomsoever issued, inures to the benefit of the party to whom the patentee is bound to convey it, or for whose use he ought in law to hold it. 9 An. 137 ; 15 An. 514.

A surety has no interest in inquiring into a suit further than to be assured of his subrogation when he makes payment. He, therefore, cannot complain of irregularity in the proceedings when they do not affect *him.*

A judgment dissolving the injunction and directing the Sheriff to sell, on the twelve months bond, and ordering the plaintiff to pay the like amount *in solido* with two other persons, is a double judgment against the same party for the same debt, *ultra petitionem,* and will be reversed.

APPEAL from the District Court of the Parish of St. Tammany, *Wilson,* J. Plaintiff *pro se,* appellant. *Jesse R. Jones* and *Durant & Hornor,* for defendants.

MERRICK, C. J. The plaintiff signed a twelve months' bond as surety for one *John Kellar.* Execution having issued thereon against the surety, he injoins the sale of his property which has been seized, on various grounds, and makes the Sheriff, *Sarah Woods, Buckley & Holt, John Kellar, William Jay, J. M. Durand,* individually and as syndic, and *Zebidee Doten,* an absentee, parties to the suit.

The case was tried by a jury, and resulted in a judgment and verdict in favor

of the plaintiff, so far as to allow him a credit of $501 25 on the twelve months' bond, and the injunction for the residue of said bond was dissolved, the land on the sale of which the twelve months' bond was made being decreed in the hands of *William Jay*, subject to the mortgage reserved thereon, and to stand as an indemnity to the plaintiff; and judgment was given absolutely in favor of *Mrs. Wood* and *Buckley & Holt*, against *Hennen, Jay* and *Durand*, syndic, *in solido*, for $1,173 75, the residue of the bond and interest, and the proceeds were ordered to be brought into Court for distribution.

*Alfred Hennen* appeals.

*William Jay* answered in the lower court, apparently without the aid of counsel; and although we find his bond for appeal in the record, we do not perceive any motion on his behalf or order, allowing the appeal; neither has he been represented in this Court by counsel. In the consideration of the case, we shall not undertake to recapitulate the proceedings, nor consider *seriatim* the numerous points contained in the elaborate briefs and oral argument made by counsel in this case. We shall content ourselves by recapitulating such facts (corroborated as they have been by the finding of the jury) as have, in our opinion, a controlling influence in the decision of the cause.

It appears that in 1850, *J. M. Durand*, of this city, had in his possession as owner about four hundred acres of land, a part of a tract originally claimed by the heirs of *Broutin* and *De la Ronde*, under an imperfect Spanish grant. The northern line of this grant ran diagonally across the S. W. quarter of the N. W. quarter of section nine, in township nine, south, range 15, east, as well as lot No. 1, corresponding with the N. E. quarter of said quarter quarter section.

The line appears to intersect the two quarter sections at their interior corners; that is, it touches the centre of the N. W. quarter of said section nine. Hence, no part of the N. W. quarter of N. W. quarter of section nine, in township nine, and only a part of lot No. 1, or the N. E. quarter of said quarter, is found in the De la Ronde grant.

*Durand* had a steam saw-mill upon the portion of the De la Ronde grant claimed by him. On the 10th day of May, 1850, he sold the land to *Zebidee Doten* for the sum of eight thousand dollars, seven thousand dollars of which were secured by notes and a mortgage upon the land, on credits running from six months to four and a half years.

On the 8th of June, 1852, *Durand* by notarial act transferred to *Buckley & Holt* one of the notes for $1,000, payable in two years from date (May 13, 1850,) and bearing interest at the rate of *five per cent.* from date until paid.

On the 19th day of July of the same year, 1852, *Buckley & Holt* obtained an order of seizure and sale upon the note held by them.

*Mrs. S. H. Wood*, holding another of said notes for $740, bearing the same rate of interest, but not matured, intervened and claimed her proportion of the proceeds of the sale.

Various other proceedings were had in this and another suit which it is not now necessary to mention. It is sufficient to say, that the Sheriff was ordered to sell the land not only by the order of seizure and sale, but by a decree rendered on the 12th of November, 1853, by which he was directed to proceed and sell, and bring the proceeds into Court for distribution.

On the 7th of January, 1854, the Sheriff sold the property for $1,685, to *John Kellar*, on twelve months' credit, under advertisements calling for a bond to be given bearing *eight* per cent. interest.

The bond was given in terms corresponding with the advertisement, and *A. Hennen* became the surety of *John Kellar*.

At this time *William Jay* was, as he had been previously, in possession of the saw-mill under seizure, and the purchase by *Kellar* was, it is shown, either made for his sole benefit or that of himself and *Kellar* in partnership.

*Five days afterwards, William Jay* instituted a suit in the Circuit Court of the United States in this city, against *John Kellar*, alleging himself to be the owner, by purchase from the United States, of 142 10-100 acres of land, being lots Nos. one, four and five, and the N. E. quarter of S. W. quarter of section 9 ; and also owner of the N. W. quarter of the N. W. quarter of said section 9, adjoining the above, which he claimed in virtue of the location thereon of a land warrant *bought of John Kellar*.

*Kellar* answered the suit, and gave notice to the payees of the twelve months' bond of the pendency of the same.

Judgment was rendered in favor of *William Jay* May 17th, 1854, decreeing him the land.

On the 5th of April, *Z. Doten* brought suit in the Sixth District Court to have the Sheriff's sale annulled for various causes. *S. H. Wood, Buckley & Holt*, and *John Kellar*, were defendants. In this suit judgment was rendered May 18, 1855, in favor of *defendants*, and of course it has the effect of the thing adjudged on the question of the validity of the sale as between *Doten* and the syndic of *Kellar* and defendants.

In the mean time *John Kellar*, viz., on the first day of June, 1854, also instituted a suit in the Sixth District Court to annul the twelve months' bond and recover damages for the eviction. He went into insolvency, and the last mentioned suit does not appear to have been tried.

The suit between *Jay* and *Kellar* in the United States Court must have been tried on the certificates of purchase and entry ; for patents did not issue in *Jay's* favor until January, 1855, and February, 1857.

The De la Ronde grant was confirmed by a special Act of Congress, 23d August, 1856, with a proviso that it should not interfere with adverse valid rights of other persons, if such existed, on any part of the land embraced in the original survey of *Trudeau*. Special Acts Congress, 1856, p. 34, ch. 7.

On the 23d of May, 1859, execution issued on the twelve months' bond against *A. Hennen*, the surety, for $1,685, and eight per cent. interest from its date, and his plantation was seized under the same.

The present injunction was filed 27th day of July, 1859, to restrain the sale of property seized under the execution.

The only points which we deem it necessary to consider, are, whether *Jay's* title and suit can be considered an eviction ; and what effect must be given to the fact, that the notices of sale and twelve months' bond specify the rate of interest at 8 per cent., when the notes bore only 5 per cent., and the order of the Judge corresponded with the same; and also whether the double judgment in this case is error.

I. It is shown that the land was not worth much, if any thing more than the price for Government land ; and that the steam mill, which was on the portion of the tract entered by *Jay*, was worth about $2,000.

The proof also makes it extremely probable that *Kellar* and *Jay* both knew at the time of the purchase the condition of the land at the Land Office. The jury evidently believed that *Jay*, who was in possession before and after the sale, was

interested in the purchase in the name of *John Kellar* as a partner, and that the suit in the United States Court was collusive, and brought to relieve *Kellar* of the bond, and to enable him and *Jay* to hold the steam saw-mill without paying for the same.

If such were the facts, (and we must say the testimony does not lead us to a contrary conclusion,) then *William Jay* stands, so far as the De la Ronde title extended, in the shoes of *Kellar* his agent.

Then what principle of law is applicable to the same; that settled in the case of *Hall, Syndic,* v. *Nevill,* 3 An. 326, as contended for by plaintiff, or that in the case of *Pepper* v. *Dunlap,* 9 An. 137, cited by defendants' counsel? We are of opinion that the latter case governs. *Kellar* and *Jay* cannot be permitted to benefit themselves by means of their collusion, to the detriment of *Doten* and his creditors. The title which they acquired, with the intention of committing a fraud upon such parties, must be held in their hands as in aid of the De la Rond title, and the price only of the same deducted from the twelve months' bond. See *Succession of Cox,* 15 An. 514.

The proof does not show with much accuracy how much of the lot No. 1 is embraced in the De la Ronde grant. As this lot has three sides made by the township and quarter quarter section lines, and as its eastern boundary is not far from north and south, and it contains only 31 62-100 acres, and as the northern line of the De la Ronde tract runs from its S. W. corner north 52° east, there will be no error to the prejudice of the plaintiff, if we assume that such portion is less than one-half, and fix the quantity at fifteen acres.

The whole quantity, then, will be one hundred and twenty-six acres, and its cost $157 50.

II. The next question is, as to the effect of the error in taking the twelve months' bond to bear eight per cent. interest instead of five per cent.

The rate of interest undoubtedly was taken into consideration, and entered into the bid as a part of the price. And as a consequence, the principal sum bid was less than it would have been, if the rate of interest had been lower.

The parties to the suit, and perhaps the purchaser, (it seems to us,) were the only persons who could complain that the sale was irregular in this respect. But the purchaser would be interested only in order to secure a good title, and when in such controversy to which he was a party, the title should be declared valid, he could have no legal ground of refusal to pay the price. Then, as by the judgment of a competent tribunal the sale has been declared valid, we do not see how the surety can be relieved from paying, according to the terms of the agreement. The surety has no interest in inquiring into the affair, further than to be assured of his subrogation when he makes payment.

The case of *Wright* v. *Higginbotham,* 10 Rob. 30, differs from the case at bar in this, that the *judgment debtor,* and not the surety of the purchaser, complained of the sale in that case, and there had been no judgment having the force of the thing adjudged, barring the right of the debtor and purchaser to rescind the sale.

III. The remaining question is, whether the judgment appealed from is erroneous in that part which condemns the plaintiff, as a debtor *in solido,* to pay the sum of $1,173 75 and interest, in addition to the dissolution of the injunction.

The prayer of the defendants in injunction was, that the same be dissolved, and for damages.

The effect of the decree dissolving the injunction and directing the Sheriff to sell on the twelve months' bond, and sentencing the plaintiff to pay the like

amount *in solido* with two other persons, is a double judgment against the same party for the same debt. It is also *ultra petitionem*.

The judgment is therefore erroneous in this respect.

It is, therefore, ordered, adjudged and decreed by the Court, that the judgment of the lower Court be reversed as to the said plaintiff, *A. Hennen ;* and we do now order, adjudge and decree, that said twelve months' bond, and the execution issued thereon, be credited as of the date of said twelve months' bond, with the sum of $157 50, and that the injunction be sustained for said amount. And it is further ordered, that said injunction be in all other respects dissolved, and that the Sheriff proceed to sell and make the money under the said execution, subject to the credit aforesaid. And it is further ordered, adjudged and decreed by the Court, that said tract of land, sold by the Sheriff to the said *John Kellar,* stand mortgaged for the payment of said bond. And it is further ordered, that the appellees, including said *William Jay,* pay the costs of the appeal, and the said *Hennen* the costs of the lower Court.

VOORHIES, J., absent.